*E-FILED - 8/22/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN OWENS,<br><br>            Plaintiff,<br><br>   v.<br><br>A. PADILLA, et. al.,<br><br>            Defendants. | No. C 06-4778 RMW (PR)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DIRECTING DEFENDANTS TO FILE SUMMARY JUDGMENT MOTION OR NOTICE REGARDING SUCH MOTION; DIRECTING ATTORNEY GENERAL TO FILE NOTICE REGARDING DEFENDANT SALAZAR; DIRECTING PLAINTIFF PROVIDE LOCATION INFORMATION FOR UNSERVED DEFENDANTS<br><br>(Docket No. 19) |

Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against prison officials at the Correctional Training Facility ("CTF") in Soledad, California. After reviewing the complaint, the court dismissed plaintiff's claims against defendants Denis and Childress, and found that, when liberally construed, the complaint stated cognizable claims for violations of his Eighth Amendment rights and for retaliation against the remaining defendants. Defendants Jordan, Edmundson, Miller and Padilla[1] have jointly filed a motion to dismiss under Rules 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has filed an opposition, and defendants have filed a reply. For the reasons explained below,

---

[1] The court also ordered service upon defendants Salazar, Kuster and Schlosser, but they have not joined in the present motion. The court addresses these defendants below.

defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff makes the following allegations in the complaint, which for purposes of the instant motion, the court assumes to be true. Parks School of Business, Inc., v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). Plaintiff is serving a state prison sentence at the Correctional Training Facility in Soledad, California. On June 29, 2004, CTF's Central Facility was placed on modified program status due to a missing hacksaw blade from the Central Facility's electrical shop. After determining where the blade came from and where it was discovered, prison administration officials agreed to search the nine inmates assigned to the electrical shop and the fourteen inmates assigned to the library in the Central Facility.

<u>June 30, 2004 Search and Handcuffing</u>

The next day, on June 30, 2004, plaintiff and his cellmate, Jones, were awakened at 2:20 p.m. by defendants Salazar and Edmundson for purposes of a strip and cell search. Plaintiff and Jones were strip searched, handcuffed behind their backs, escorted down two flights of stairs, and advised that defendant Sergeant Padilla wanted to talk to them. Defendant Padilla observed plaintiff and Jones being escorted down the stairs in handcuffs before Padilla left the G-wing. Plaintiff and Jones were locked in the G-wing barbershop in handcuffs behind their backs, a ten by seven foot room with no toilet. After two hours, the handcuffs began to interfere with plaintiff's circulation, and he asked defendant Miller to remove them. Miller responded that he could not remove the handcuffs, but he did loosen them. When the dinner meal was served, Miller returned to the barbershop and told plaintiff and Jones that because they did not have any utensils, a dinner tray would be set aside for them when they returned to their cell.

At approximately 8:00 p.m., plaintiff asked defendant Salazar to remove the handcuffs. Salazar stated that defendant Padilla wanted the handcuffs to remain on until after the cell searches were completed. Plaintiff then told defendant Salazar that keeping them in handcuffs for long periods of time was considered cruel and unusual punishment. Salazar left the barbershop, returned in twenty minutes and removed the handcuffs. Defendant Padilla then came to the barbershop and gave plaintiff and Jones dinner trays to eat with their fingers.

1  Plaintiff suffered circulation problems in his hands, cramping in his arms and shoulder.

2        Defendant Schlosser was defendant Padilla's direct supervisor during the cell search
3  incident. Defendant Schlosser was aware of the ongoing search and the fact that plaintiff and
4  Jones were handcuffed in the barbershop during this time. Defendant Schlosser failed to take
5  any action to curb the inappropriate and excessive use of handcuffs. Plaintiff maintains that
6  there is no known policy necessitating the handcuffing of inmates after a strip search, for the
7  purpose of conducting a cell search. Plaintiff filed a prison administrative appeal concerning the
8  defendants' handcuffing, and it was acknowledged that the handcuffing was inappropriate.

9        After being locked in the barbershop for over six hours, plaintiff and Jones were returned
10  to their cell at approximately 9:00 p.m.. Officials had removed contraband from plaintiff's cell,
11  including a marijuana cigarette butt. Plaintiff received two property receipts for all items that
12  were removed from his cell signed by defendant Edmundson. Defendant Edmundson told
13  plaintiff that plaintiff had the right to mail his personal property that was considered contraband
14  home, or plaintiff could donate this property. Plaintiff elected to mail all of his property home,
15  except for his personal television, which would be returned after it was resealed.[2] Defendant
16  Edmundson told plaintiff that he would acquire the necessary forms so that plaintiff could mail
17  the property home. When Edmundson returned to plaintiff's cell door, he told plaintiff that
18  Padilla and Salazar said that plaintiff would not be permitted to mail any of his alleged
19  contraband property home. Edmundson also conveyed to plaintiff that defendant Padilla stated
20  that if plaintiff appealed this decision, he would receive a "CDC 115" rules violation report
21  ("RVR").

22        On July 25, 2004, plaintiff filed an administrative appeal to have his property returned,
23  which was partially granted. Plaintiff was notified that his property was stored pending
24  investigation and that he would be given an opportunity to mail it home or have the prison
25  dispose of the alleged contraband. After approximately seventy-five days, plaintiff received his
26  television, but thirty of his magazines could not be located. Officials indicated that because

---

28      [2]The television had to be resealed because officials found the marijuana cigarette butt in the television.

Order Granting in Part and Denying in Part Motion to Dismiss, etc.
P:\pro-se\sj.rmw\cr.06\Owens778mtd       3

1  plaintiff could not prove the magazines were his, that they were destroyed.

2  Discipline For Marijuana Possession

3   On July 21, 2004, Padilla and Edmundson filed a rules violation report indicating that they had found marijuana in plaintiff's cell during the June 30, 2004 search. Plaintiff received notice of the RVR on July 26, 2004, and on August 3, 2004, appeared for a disciplinary hearing before defendant Jordan. Jordan refused to allow plaintiff to call witnesses at the hearing, stating that there was a preponderance of evidence against plaintiff and citing to the existing lockdown of the prison's general population. Plaintiff was found guilty of the serious rules violation and assessed a forfeiture of 121 days of good time credits.

Handling of Legal Mail

 On August 31, 2004, plaintiff was housed in Z-wing at CTF. After the diner meal, plaintiff observed his name on the incoming legal mail list posted by the housing unit staff. Plaintiff did not have the privilege to exit his cell during the evening in order to retrieve his mail. Salazar and Kuster were in the unit office at the time. He explained his legal mail situation to Correctional Officers Brogdon and Salazar, and Salazar delivered plaintiff's legal mail to him the next day. Plaintiff has previously filed a staff complaint against defendant Salazar on August 25, 2004, and Kuster had found the marijuana in plaintiff's cell on July 30, 2004. Plaintiff filed an administrative appeal regarding the late delivery of his legal mail. See Complaint, Ex. D. The appeal was partially granted, and Salazar's conduct was found contrary to policy. See Complaint at 18-19.

 Plaintiff's remaining claims are for cruel and unusual punishment, retaliation for exercising his First Amendment rights and a violation of his right to due process to call witnesses at his disciplinary hearing. Plaintiff seeks compensatory and punitive monetary damages, costs of suit, and injunctive and declaratory relief.

**DISCUSSION**

A.   Standard of Review

 A case should be dismissed under Rule 12(b)(6) if it fails to state a claim upon which relief can be granted. Parks School of Business, Inc., v. Symington, 51 F.3d 1480, 1483 (9th Cir.

1   1995).  Dismissal for failure to state a claim is a ruling on a question of law.  Id.  "The issue is
2   not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to
3   support his claim."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  "While a
4   complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual
5   allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief'
6   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause
7   of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the
8   speculative level."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations
9   omitted).  A motion to dismiss should be granted if the complaint does not proffer "enough facts
10  to state a claim for relief that is plausible on its face."  Id. at 1974.  A pro se pleading must be
11  liberally construed, and "however inartfully pleaded, must be held to less stringent standards
12  than formal pleadings drafted by lawyers."  Id..

13      Review is limited to the contents of the complaint, Clegg v. Cult Awareness Network, 18
14  F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or
15  documents the complaint necessarily relies on and whose authenticity is not contested.  Lee v.
16  County of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  Allegations of fact in the complaint
17  must be taken as true and construed in the light most favorable to the non-moving party.
18  Symington, 51 F.3d at 1484.

19      "Conclusory allegations without more are insufficient to defeat a motion to dismiss for
20  failure to state a claim."  McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988).
21  Moreover, when a claim involves an element of improper motive, a heightened pleading standard
22  applies: the plaintiff must make nonconclusory allegations supporting an inference of unlawful
23  intent.  Alfrey v. United States, 276 F.3d 557, 567 (9th Cir. 2002).

24  B.   Plaintiff's Claims
25      1.   Eighth Amendment
26  Plaintiff alleges that defendants Padilla, Salazar, Miller, Edmundson and Schlosser acted
27  with deliberate indifference and subjected him to physical, emotional, and mental abuse by
28  handcuffing plaintiff and locking him in the G-wing barbershop.  For over six hours, while the

1  search of his cell was completed, plaintiff was handcuffed behind his back, and had no toilet
2  facility.  He alleges that the handcuffing caused circulation problems in his hands and cramping
3  in his arms and shoulder.  In the order of service, the court found plaintiff's allegations, when
4  liberally construed, state a cognizable Eighth Amendment claim against defendants Padilla,
5  Salazar, Miller, Edmundson and Schlosser.

6  In its prohibition of "cruel and unusual punishment," the Eighth Amendment places
7  restraints on prison officials, who must provide all prisoners with the basic necessities of life
8  such as food, clothing, shelter, sanitation, medical care and personal safety, and may not use
9  excessive force against prisoners.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Hudson v.
10 McMillian, 503 U.S. 1, 6-7 (1992).  A prison official violates the Eighth Amendment when two
11 requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, and
12 (2) the prison official possesses a sufficiently culpable state of mind.  See Farmer, 511 U.S. at
13 834.

14 Defendants argue that the deprivation in this case was "de minimis" and not sufficiently
15 serious to implicate the Eighth Amendment.  Plaintiff's confinement in the barbershop room
16 without a toilet for approximately six hours, and his having to eat with his fingers, would not,
17 without more, implicate the Eighth Amendment.  See, e.g., Holloway v. Gunnell, 685 F.2d 150
18 (5th Cir. 1985) (no claim stated where prisoner forced to spend two days in hot dirty cell with no
19 water); Miles v. Konvalenka, 791 F. Supp. 212 (N.D. Ill. 1992) (single instance of finding mouse
20 in food not actionable).  Here, however, plaintiff was also handcuffed behind his back for over
21 six hours, leading to circulation problems and cramps.  Defendants argue that the claim should
22 be dismissed because there is no allegation of a "serious" injury.  While the extent of injury
23 suffered by an inmate is one of the factors to be considered in determining whether a use of force
24 is wanton and unnecessary, the absence of serious injury does not end the Eighth Amendment
25 inquiry.  Hudson, 503 U.S. at 7.  Drawing all inferences from plaintiff's allegations in plaintiff's
26 favor, as the court must do at this stage, his confinement to handcuffs behind his back for over
27 six hours amounts to a sufficiently serious deprivation to implicate the Eighth Amendment.
28 Defendants also argue that the allegations do not establish that defendants acted with a

sufficiently culpable state of mind. If this were purely a claim about prison conditions, the necessary state of mind would be one of "deliberate indifference." See, e.g., Farmer, 511 U.S. at 834. Defendants argue, correctly, that in this case plaintiff must show a more culpable state of mind. Where the claim is that prison officials used excessive force, a plaintiff must show that the officials applied force maliciously and sadistically to cause harm. See Hudson, 503 U.S. at 6-7. In addition, the "malicious and sadistic" standard applies where a prisoner challenges actions taken in exigent circumstances. See LeMaire v. Maass, 12 F.3d 1444, 1452-54 (9th Cir. 1993). Here, both the use of excessive force – i.e. defendants' handcuffing plaintiff and keeping him in handcuffs for too long – and exigent circumstances – i.e. that the prison unit was placed on a "modified program" while officials searched for the missing blade – are alleged. Accordingly, plaintiff must in this case establish that defendants acted, not merely with deliberate indifference, but with the intent to cause plaintiff pain.

According to the allegations in the complaint, which the court must accept as true at this stage, plaintiff and Jones were not offering any resistance and were already locked in small room when defendants decided to keep them in handcuffs. Furthermore, there was no policy requiring that plaintiff be kept in handcuffs during his cell search, and on administrative appeal prison officials acknowledged that the handcuffing was inappropriate. See Complaint at 13, 14, 15; Ex. B. Defendants may ultimately produce evidence demonstrating that they had legitimate safety or other reasons for keeping plaintiff in handcuffs under the circumstances. However, at this stage, the court must draw all inferences from the allegations in plaintiff's favor, and doing so, it can reasonably be inferred that defendants kept plaintiff in handcuffs with the intent to cause him pain and suffering. Accordingly, plaintiff's allegations state a cognizable claim that defendants violated his Eighth Amendment rights.

2. Retaliation

Plaintiff alleges that defendants Padilla and Salazar, through defendant Edmundson, filed a rules violation report against plaintiff in retaliation for his filing an inmate grievance concerning against them his property, after defendants had threatened to do so. He further claims that defendants Salazar and Kuster denied plaintiff timely delivery of his legal mail in

retaliation for his filing the grievance about his property.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); accord Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (same).

Defendants argue that plaintiff's allegations fail to satisfy the fifth element of a retaliation claim, namely the absence of a legitimate penological reason for issuing the rules violation report. The rules violation report was issued for plaintiff's possession of marijuana. Clearly, prohibiting the possession of illegal drugs in prison is a legitimate correctional goal. Accordingly, plaintiff's allegations establish that the rules violation report advanced a legitimate penological goal, and cannot be the basis of a retaliation claim. Moreover, the rules violation report could not have been issued in retaliation for plaintiff's grievance regarding his property because the report was filed by defendants on July 21, 2004, four days *before* plaintiff filed the property grievance.

Plaintiff also claims that defendants retaliated against him by delaying delivery of his legal mail for less than a day. Plaintiff's allegations do not establish the requisite chilling effect of a retaliation claim. There is no allegation that such a short delay, from one evening until the following day, in plaintiff's receiving his legal mail resulted in any harm to plaintiff or to any court case plaintiff had pending. Indeed, plaintiff's allegations indicate that he continued to file and pursue administrative grievances following the delay in mail, further indicating that his speech was not in fact "chilled" by the minor delay in receiving mail. Moreover, retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus between the two. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this"). Here, plaintiff makes no allegation showing that

1  defendants delayed the mail delivery because plaintiff filed the grievance regarding his property,
2  only that the delay occurred after filing of the grievance. Without more, such allegations do not
3  state a cognizable retaliation claim.
4     Plaintiff's allegations, even liberally construed, do not state a cognizable First
5  Amendment retaliation claim against defendants for issuing the rules violation report for his
6  possession of marijuana or for the minor delay in delivering his mail. Accordingly, defendants'
7  motion to dismiss this claim will be granted.
8     3.   Due Process
9     Plaintiff alleges that defendant Jordan violated his due process rights by refusing to allow
10 him to call witnesses with exculpatory information at the disciplinary hearing. Plaintiff alleges
11 that, as a result, the hearing was a "sham" and led to an erroneous finding of guilt. Plaintiff was
12 assessed a forfeiture of 121 days of good time credits. Plaintiff requests that the rules violation
13 be expunged from his record, and monetary damages.
14    Plaintiff's claim expungement of the rules violation report must be brought in a habeas
15 action, not a civil rights complaint under 42 U.S.C. § 1983. A claim that would necessarily
16 imply the invalidity of a prisoner's conviction or continuing confinement must be brought in a
17 habeas petition. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). A claim involving the loss of
18 good time credits affects the duration of a prisoner's custody, a determination of which may
19 likely result in entitlement to an earlier release, and thus must be brought in habeas. See
20 Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir. 1997). Plaintiff's claims in this case
21 challenging the constitutionality of the discipline would, if successful, result in the reinstatement
22 of his good time credits and thereby affect the duration of his custody. Thus, the claim must be
23 brought in a habeas petition. Plaintiff's claim to have the disciplinary violation expunged from
24 his record will be dismissed without prejudice to bringing it in a petition for writ of habeas
25 corpus, after the claim has been exhausted in the state courts. See Trimble v. City of Santa Rosa,
26 49 F.3d 583, 586 (9th Cir. 1995).
27    Plaintiff's claim for money damages for the alleged violation of his due process rights at
28 the disciplinary hearing is barred, at least until the disciplinary finding has been expunged, under

Heck v. Humphrey, 512 U.S. 477 (1994).  In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  Heck v. Humphrey, 512 U.S. 477, 486-487 (1994).  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Id. at 487.

Heck bars a claim of unconstitutional deprivation of time credits because such a claim necessarily calls into question the lawfulness of the plaintiff's continuing confinement, i.e., it implicates the duration of the plaintiff's sentence.  Sheldon v. Hundley, 83 F.3d 231, 233 (8th Cir. 1996).  Heck also bars a claim for using the wrong procedures in a disciplinary hearing that resulted in the deprivation of time credits if "the nature of the challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment."  Edwards v. Balisok, 520 U.S. 641, 645 (1997).  Here, plaintiff denies having possessed marijuana.  He claims that the due process violation of excluding exculpatory witnesses rendered the hearing a "sham," and led to an erroneous finding of guilt.  Such a claim, if true, necessarily implies the invalidity of the finding that he possessed marijuana, as well as the resulting forfeiture of 121 days of good time credits.  See Edwards, 520 U.S. at 646-47 (a claim for damages based on allegations that plaintiff was completely denied the opportunity to put on a defense and that there was deceit and bias on the part of the decisionmaker necessarily implies the invalidity of the punishment imposed and is barred by Heck).  Accordingly, plaintiff's claim for money damages is barred by Heck and will be dismissed without prejudice to plaintiff's refiling such claim if his guilty finding is later invalidated.[3]

---

[3] In light of the court's conclusion, the court need not reach defendants' alternative argument that the due process claim should be dismissed for failure to exhaust administrative remedies.

Order Granting in Part and Denying in Part Motion to Dismiss, etc.
P:\pro-se\sj.rmw\cr.06\Owens778mtd                    10

C.    Defendants

As described above, defendants Salazar, Kuster and Schlosser have not appeared in this action. These defendants are all alleged to have been CTF officials and located at CTF, like the other four defendants who have appeared herein and who filed the instant motion. The California Attorney General has indicated in the instant motion that he is not representing these defendants because "according to this Court's docket [they] have not been served."

All of the claims against defendant Kuster have been dismissed, and he is not named as one of the defendants to the Eighth Amendment claim. With respect to Salazar, the court's docket indicates that he has in fact been served (see Docket No. 13). Accordingly, the California Attorney General **shall notify the court within 7 days whether or not it is representing defendant Salazar in this matter**.

The United States Marshal attempted service upon defendant D.R. Schlosser at CTF because that is where plaintiff indicated he was located.[4] The summons was returned unexecuted because he is not at CTF and not an employee there. Here, plaintiff's complaint has been pending for over 120 days, and thus, absent a showing of "good cause," is subject to dismissal without prejudice as to the unserved defendant. See Fed. R. Civ. P. 4(m). Because plaintiff has not served Schlosser, nor has he provided sufficient information to allow the Marshal to locate and serve him, plaintiff must remedy the situation or face dismissal of his claims against said defendant without prejudice. See Walker v. Sumner, 14 F.3d at 1421-22 (holding prisoner failed to show cause why prison official should not be dismissed under Rule 4(m) where prisoner failed to show he had provided Marshal with sufficient information to effectuate service). Accordingly, plaintiff must either himself effect service on defendant Schlosser or provide the court with his accurate and current location such that the Marshal is able to effect service upon him. Failure to do so within thirty days of the date this order is filed will result in the dismissal of the claims against Schlosser.

---

[4] As plaintiff is not proceeding in forma pauperis, he is not entitled to rely on the Marshal for service. See 28 U.S.C. § 1915(d). The Marshal has attempted service as a courtesy to plaintiff.

**CONCLUSION**

For the foregoing reasons, the court hereby orders as follows:

1. Defendants' motion to dismiss is DENIED as to plaintiff's Eighth Amendment claim.  The motion is GRANTED as to plaintiff's First Amendment and due process claims, which claims are DISMISSED.  The dismissal of the due process claim is without prejudice, as described above.

2. No later than **sixty (60) days** from the date of this order, defendant shall file a motion for summary judgment, or notify the court that they are of the opinion that this case cannot be resolved by such a motion.

    a. Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure.  **Defendant is advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute.  If any defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the court prior to the date the summary judgment motion is due.**

    b. Plaintiff's opposition to the dispositive motion shall be filed with the court and served on defendant no later than **thirty (30) days** from the date defendant's motion is filed.  The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

1  See <u>Rand v. Rowland</u>, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).  Plaintiff is advised to read
2  Rule 56 of the Federal Rules of Civil Procedure and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317
3  (1986) (holding party opposing summary judgment must come forward with evidence showing
4  triable issues of material fact on every essential element of his claim).  Plaintiff is cautioned that
5  failure to file an opposition to defendant's motion for summary judgment may be deemed to be a
6  consent by plaintiff to the granting of the motion, and granting of judgment against plaintiff
7  without a trial.  <u>See</u> <u>Ghazali v. Moran</u>, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); <u>Brydges</u>
8  <u>v. Lewis</u>, 18 F.3d 651, 653 (9th Cir. 1994).

         c.  Defendant <u>shall</u> file a reply brief no later than **fifteen (15) days** after
10 plaintiff's opposition is filed.

         d.  The motion shall be deemed submitted as of the date the reply brief is due.
12 No hearing will be held on the motion unless the court so orders at a later date.

13     3.  The California Attorney General shall notify the court **within 7 days** of the date
14 this order is filed whether or not it is representing defendant Salazar in this matter.

15     4.  Plaintiff must provide the court with Schlosser's accurate and current location
16 information, such that the Marshal is able to effect service upon him.  <u>If plaintiff fails to provide</u>
17 <u>the court with Sclosser's accurate and current location, within **thirty (30) days** of the date this</u>
18 <u>order is filed, plaintiff's claims against Schlosser will be dismissed pursuant to Rule 4(m) of the</u>
19 <u>Federal Rules of Civil Procedure; the dismissal will be without prejudice to plaintiff refiling his</u>
20 <u>complaint with such information.</u>

21     This order terminates Docket No. 19.

22     IT IS SO ORDERED.

23 DATED:  8/22/08            /s/ Ronald M. Whyte
24                                          RONALD M. WHYTE
                                            United States District Judge