1
2
3
4
5                                          *E-FILED - 9/30/09*
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11
      STEVEN L. OWENS,                )   No. C 06-04778 RMW (PR)
12                                    )
                  Plaintiff,          )   ORDER DENYING DEFENDANT
13                                    )   SCHLOSSER'S MOTION TO
         vs.                          )   DISMISS; GRANTING
14                                    )   DEFENDANTS' MOTION FOR
      A. PADILLA, et al.,             )   SUMMARY JUDGMENT
15                                    )
                  Defendants.         )   (Docket Nos. 42, 55, 56)
16                                    )
                                      )
17  _____)

18         Plaintiff Steven Owens, proceeding pro se, filed a civil rights complaint pursuant

19  to 42 U.S.C. § 1983 against prison officials at the Correctional Training Facility ("CTF")

20  in Soledad, where he was housed.  Defendant Schlosser moved to dismiss the excessive

21  force claim against him for failure to exhaust administrative remedies.  Defendants

22  Schlosser, Miller, Edmundson, and Padilla also moved for summary judgment, arguing

23  that there was no genuine issue of material fact and that they were entitled to the

24  judgment as a matter of law.  Plaintiff opposed both motions, and defendants filed a reply.

25  Having carefully considered the papers submitted, the court hereby DENIES defendant

26  Schlosser's motion to dismiss and GRANTS defendants' motion for summary judgment,

27  for the reasons set out below.

28  ///

Order Denying Defendant Schlosser's Motion to Dismiss; Granting Defendants' Motion for Summary Judgment
G:\PROSEEX1\J Murai\Owens_MSJ_order.wpd

1

# BACKGROUND[1]

2   On June 30, 2004, plaintiff was housed at the G-Wing of CTF Soledad, California.

3   (Declaration of Jose A. Zelidon-Zepeda in Support of Defendants' Motion for Summary

4   Judgment ("Zelidon-Zepeda Decl.") at 36:13-18.)  At the time, the prison was in

5   "lockdown" mode because correctional staff had found a weapon, specifically a hacksaw

6   blade.  (Id. at 33:15-34:1.)  Plaintiff, who at the time was employed at the central

7   electrical facility at CTF, was questioned by the prison's investigative services unit

8   regarding the missing hacksaw blade on the morning of June 30, 2004.  (Id. at 34:2-21;

9   35:12-23.)  After this interview, plaintiff returned to his cell.  (Id. at 87:9-21.)

10   Defendants Edmundson and Salazar[2] were the two "tier officers" at G-wing, and

11   defendant Miller was stationed at the door to the facility.  (Id. at 72:14-21.)  They were

12   the only regular duty officers in G-wing during this incident.  (Id. at 72:10-25.)

13   According to defendants, Edmundson and Salazar informed defendant Padilla, who was

14   the correctional sergeant in charge of G-wing at the time, that they detected the smell of

15   marijuana emanating from plaintiff's cell during one of their regular rounds.  (Declaration

16   of A. Padilla Supporting Defendants' Motion to Dismiss and for Summary Judgment

17   ("Padilla Decl."), ¶ 5.)[3]  Padilla then instructed Edmundson and Salazar to search

18   plaintiff's cell.  (Id.)  Plaintiff disputes defendants' version of the facts regarding the cell

19   search.  According to plaintiff, his cell was searched in connection with the missing

20   hacksaw blade, not because of marijuana.  (Compl. at 12; Plaintiff's Opposition to

21   Defendants' Motion to Dismiss and for Summary Judgement ("Plaintiff's Opp.") at 8-9.)

22

23   [1] The facts stated herein are undisputed unless otherwise noted.

24   [2] In September, 2008, plaintiff was ordered to provide the court with defendant Salazar's

25   accurate and current location information within thirty days, such that the Marshal would be able
to effectuate service upon him.  (See Docket No. 31.)  Since plaintiff failed to do so within the

26   prescribed time, his claims against Salazar are DISMISSED without prejudice pursuant to Rule
4(m) of the Federal Rules of Civil Procedure.

27   [3] Plaintiff filed a motion to strike the Padilla declaration (docket no. 55), which is addressed

28   infra, p. 5.

Order Denying Defendant Schlosser's Motion to Dismiss; Granting Defendants' Motion for Summary Judgment
G:\PROSEEX1\J Murai\Owens_MSJ_order.wpd

Edmundson and Salazar conducted a strip search of plaintiff and his cellmate, Jones, and handcuffed both after taking them out of their cell.  (Zelidon-Zepeda Decl. at 47:25-49:7.)  Salazar handcuffed plaintiff, and Edmundson handcuffed Jones.  (Id. at 48:17-19; 53:14-20.)  The strip search was conducted without any incident or use of physical force.  (Id. at 49:8-22.)  Plaintiff was not placed in any form of restraint other than handcuffs.  (Id. at 52:17-53:11.)  Edmundson and Salazar escorted plaintiff and Jones to the barbershop.  (Id. at 65:17-20.)

Although inmates are usually placed in individual holding cells while their cells are being searched, G-wing building lacks such holding cells.  (Padilla Decl. ¶ 6.)  For this reason, inmates in G-wing are usually placed in the barbershop when their cells are searched.  (Id.)  The barbershop, which is located inside the G-wing building on the first floor, is the same approximate size as plaintiff's cell.  (Zelidon-Zepeda Decl. at 61:20-21.)

When he was initially placed in the barbershop, plaintiff asked Salazar to remove the handcuffs, and Salazar replied that he would have to check with Padilla before he could do so.  (Zelidon-Zepeda Decl. at 66:15-67:1.)  Salazar and Edmundson then left the barbershop area, and plaintiff did not see or talk to Salazar or Edmundson again until he was placed back in his cell about six hours later.  (Id. at 67:14-17; 69:6-12; 103:18-23.)  Similarly, plaintiff did not talk to Padilla until Padilla delivered food trays to the barbershop around dinner time.  (Id. at 51:13-52:4; 104:6-105:5.)  When Padilla gave plaintiff the food tray, plaintiff responded "No, I'm not taking nothing, you can have that shit," which have been the only words between plaintiff and Padilla to this day.  (Id. at 104:10-105:5; 104:22-105:5.)

Twenty to thirty minutes after Salazar placed plaintiff in the barbershop, plaintiff complained to Miller that the handcuffs were too tight.  (Id. at 67:13-17.)  Miller replied that he would have to check with Salazar and Edmundson because they were the ones who had put the handcuffs on.  (Id.)  When Miller returned, he informed plaintiff that Salazar and Edmundson were searching plaintiff's cell, and that they were the ones who

1    had to take the handcuffs off.  (Id. at 67:18-21; 70:14-18.)  Plaintiff then started kicking

2    on the barbershop door because the handcuffs were getting increasingly tighter:  "at that

3    particular time when I sat down and being handcuffed I think they got tighter and tighter

4    and I didn't know that maybe I was the one doing the moving that was causing it . . . ."

5    (Id. at 67:23-25.)  Miller apparently heard plaintiff kicking the door, and he came back.

6    (Id. at 68:1-2.)

7        At this point, plaintiff told Miller that the handcuffs were "stopping my circulation

8    in my arm."  (Id. at 68:3-4.)  Miller looked at plaintiff's hands, which were red, and

9    replied that "the reason why is because every time you move, they're going to tighten

10   because they wasn't locked."  (Id. at 68:7-8.)  In other words, the handcuffs were not

11   properly locked, and thus they became tighter every time plaintiff moved around.  (Id. at

12   68:9-11.)  Miller "hit something" on the handcuffs, and they loosened "immediately," at

13   which point plaintiff's circulation improved and he "could tolerate the cuffs being on."

14   (Id. at 68:5-6; 70:19-71:4.)  By plaintiff's estimation, this happened approximately one

15   hour after plaintiff was placed in the barbershop.  (Id. at 71:9-11.)  After Miller loosened

16   plaintiff's handcuffs and locked them properly, plaintiff had no other problems with the

17   handcuffs until they were removed.  (Id. at 74:19-24.)  The search of plaintiff's cell lasted

18   approximately from 2:30 p.m. until 9:00 p.m.  (Id. at 77:21-24.)  The search turned up a

19   marijuana cigarette in plaintiff's cell.  (Id. at 93:17-25.)

20        On July 14, 2004, plaintiff submitted a CDCR form 602 inmate grievance

21   regarding the June 30, 2004 handcuffing incident.  (Compl., Ex. B.)  Plaintiff's First

22   Level appeal was denied on August 17, 2004.  (Id. at 8.)  Plaintiff's Second Level appeal

23   was denied on September 16, 2004.  (Id. at 19.)  Plaintiff's Director Level appeal was

24   denied on February 14, 2005, however, in the appeal decision it was found that "the

25   extended retention in restraints in this incident was inappropriate and inconsistent with

26   expectations."  (Id. at 22.)  Plaintiff filed the instant federal action on August 7, 2006.

27   ///

28   ///

1

**PLAINTIFF'S MOTION TO STRIKE**

2       Plaintiff moves to strike a declaration in support of summary judgment submitted

3   by defendant Padilla.  (Plaintiff's Motion to Strike and Objection to Declaration of

4   Defendant A. Padilla ("MTS").)  Plaintiff contends that information in the Padilla

5   declaration conflicts with defendants' previous motion to dismiss.[4] (MTS, at 1-2.)

6   Defendants opposed plaintiff's motion to strike, arguing that:  (1) there is no conflict

7   between the two documents; and (2) the declaration is admissible because it is based on

8   Padilla's personal knowledge.  (Defendants' Opposition to Plaintiff's Motion to Strike

9   ("Opp. to MTS"), at 2-3.)

10      When seeking summary judgment, a party may submit affidavits that are based on

11  personal knowledge, set forth facts that would be admissible in evidence, and show

12  affirmatively that the affiant is competent to testify to the contents of the affidavit.  See

13  Fed. R. Civ. P. 56(e).  Exhibits that do not conform to Rule 56 may be stricken from the

14  record.  See United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency, 456 F.

15  Supp. 2d 46, 51 (D.D.C. 2006) (a district court may "strike all or part of an affidavit for

16  failing to satisfy the requirements of Federal Rule of Civil Procedure 56(e)").

17      The court finds that plaintiff's objection is unwarranted for two reasons.  First, the

18  recitation of facts from the previous motion to dismiss were derived from the plaintiff's

19  complaint.  Defendants specifically noted that "[t]he following facts are derived from

20  Plaintiff's Complaint and are set out for purposes of this Motion only.  Defendants do not

21

22      [4] Plaintiff asks the court to take judicial notice of portions of defendants' previous filings and
23  portions of the California Department of Corrections and Rehabilitation (CDCR) Operations
    Manual.  (Plaintiff's Request for Judicial Notice ("RJN"), at 1-2.)  These documents relate to:  (1)
24  establishing plaintiff's version of why defendants searched his cell; and (2) CDCR procedures
    for searching a prisoner's body for contraband.  The court can take judicial notice of court filings
25  in the instant case.  Accordingly, the court GRANTS plaintiff's request for judicial notice of
    defendants' motion to dismiss (RJN Ex. A, docket no. 19) and defendants' reply in support of
26  motion to dismiss (RJN Ex. B, docket no. 25).  See Reyna Pasta Bella v. Visa USA Inc., 442
27  F.3d 741, 746 n.6 (9th Cir. 2006) (holding that it is appropriate to take judicial notice of court
    filings in the underlying litigation). The court DENIES the judicial notice request with respect to
28  RJN Ex. C, because the court did not rely on that exhibit in rendering its decision.

1  concede the accuracy or truthfulness of these allegations." (Defendants' Notice of

2  Motion and Motion to Dismiss Under Rule 12(b) and For a Stay of Discovery Pending a

3  Ruling on This Motion; Memorandum of Points and Authorities, at 2 n.1.) Second,

4  Padilla's declaration is based on his personal knowledge of the events and meets the

5  requirements of FRCP 56(e). See Fed. R. Civ. P. 56(e). Accordingly, the motion to

6  strike is DENIED.

7  **DEFENDANT SCHLOSSER'S MOTION TO DISMISS**

8  **I.   Legal Standard**

9       The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

10  brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

11  law, by a prisoner confined in any jail, prison, or other correctional facility until such

12  administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

13       Nonexhaustion under § 1997e(a) is an affirmative defense, that is defendants have

14  the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d

15  1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust

16  administrative remedies, the court may look beyond the pleadings and decide disputed

17  issues of fact. Id. at 1119-20. If the court concludes that the prisoner has not exhausted

18  nonjudicial remedies, the proper remedy is dismissal without prejudice. Id. at 1120.

19  Exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought into

20  court. Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter v. Nussle, 435 U.S. 516,

21  524 (2002)); see also McKinney v. Carey, F.3d 1198, 1199-1201 (9th Cir. 2002) (finding

22  that exhaustion must occur prior to filing suit).

23       The State of California provides its inmates and parolees the right to appeal

24  administratively "any departmental decision, action, condition, or policy which they can

25  demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15,

26  § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging

27  misconduct by correctional officers. See id. § 3084.1(e). In order to exhaust available

28  administrative remedies within this system, a prisoner must proceed through several

1  levels of appeal:  (1) informal resolution, (2) formal written appeal on a CDC 602 inmate
2  appeal form, (3) second level appeal to the institution head or designee, and (4) third level
3  appeal to the Director of the California Department of Corrections and Rehabilitation.  Id.
4  § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  This satisfies the
5  administrative remedies exhaustion requirement under § 1997e(a).  Id. at 1237-38.  A
6  prisoner need not proceed further and also exhaust state judicial remedies.  Jenkins v.
7  Morton, 148 F.3d 257, 259-60 (3d Cir. 1998).

8         The filing of an untimely grievance or appeal is not proper exhaustion.  See
9  Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  A prisoner must complete the
10  administrative review process in accordance with the applicable procedural rules,
11  including deadlines, as a precondition to bringing suit in federal court.  Id.  In California
12  state prisons, the deadline for filing an administrative grievance is 15 working days from
13  the date the administrative decision or action being complained of is taken.  See 15 Cal.
14  Code Regs. § 3084.6(c); Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008) ("Ngo
15  II") (finding claims unexhausted where filed more than 15 working days after date of
16  decision, i.e., after deadline in Cal. Code Regs. tit. 15, § 3084.6(c) had passed).

17  **II.   Analysis**

18         On July 20, 2004, CTF received plaintiff's only timely grievance regarding his
19  allegations of excessive force from the handcuffing incident in the barbershop.
20  (Declaration of R. Hager Supporting Defendants' Motion for Summary Judgment ("Hager
21  Decl."), Ex. A at 2 (grievance log number CTF-C-04-02098).)  Plaintiff pursued it
22  through the director's level before filing this lawsuit.  (Id.)  In his grievance, plaintiff
23  made allegations of excessive force against defendants Padilla, Salazar, Edmundson, and
24  Miller.  (Compl., Ex. B at 3.)  However, plaintiff did not make any allegations against
25  defendant Schlosser.  (Id.)  In the instant suit, plaintiff argues that defendants Padilla,
26  Salazar, Edmundson, Miller, and Schlosser inflicted cruel and unusual punishment in
27  violation of the Eighth Amendment by using, or failing to prevent, inappropriate and
28  excessive use of force when plaintiff was handcuffed and locked in the barbershop.

1  Defendant Schlosser argues that the claim against him should be dismissed for

2  failure to exhaust administrative remedies in accordance with 42 U.S.C. § 1997e(a).

3  Although Schlosser does not dispute that the grievance regarding the handcuffing incident

4  was exhausted, he claims that it failed to exhaust administrative remedies as to him

5  because plaintiff did not name Schlosser in the grievance.  (Defendants' Notice of Motion

6  to Dismiss and for Summary Judgment ("MSJ") at 10.)

7  This court finds that Schlosser's argument lacks merit.  In <u>Jones</u>, the Supreme

8  Court indicated that "exhaustion is not <u>per se</u> inadequate simply because an individual

9  later sued was not named in the grievances."  549 U.S. at 219.  The Court held that

10  because the Michigan Department of Corrections' procedures made no mention of

11  naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper

12  exhaustion was unwarranted.  The Court reasoned that the purpose underlying the

13  exhaustion requirement and the grievance "is to alert prison officials to a problem, not to

14  provide personal notice to a particular official that he may be sued; the grievance process

15  is not a summons and complaint that initiates adversarial litigation."  <u>Id.</u> (citation and

16  quotation marks omitted).

17  The California form, like the Michigan one, does not require an inmate to identify

18  any specific individuals.  Instead, it asks him to "describe problem" and "action

19  requested."  (<u>See</u> Compl., Ex. B at 1-2.)  In his grievance, plaintiff described his problem

20  in detail and identified the action he was requesting.  That is all the PLRA requires of

21  him.  <u>See Jones</u>, 549 U.S. at 219; <u>see also</u> <u>Butler v. Rianda</u>, 397 F.3d 1181, 1183 (9th Cir.

22  2005) (California prisoner exhausted administrative remedies by filling out an ADA

23  accommodation form even though he did not identify the wrongdoers on the form because

24  the form asked him to "describe the problem" and declare "what specific modification or

25  accommodation is requested," but did not require him to identify any specific persons).

26  Schlosser has the burden to raise and prove the affirmative defense of failure to

27  exhaust administrative remedies.  <u>See</u> <u>Wyatt</u>, 315 F.3d at 1117-19 & nn. 9 & 13.  He has

28  not carried his burden in this case.  Therefore, Schlosser's motion to dismiss is DENIED.

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.   <u>Legal Standard</u>

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  <u>Id.</u>

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  <u>Id.</u> at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted."  <u>Anderson</u>, 477 U.S. at 248.  "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Id.</u> at 247 (emphasis in original).  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  <u>Keenan v. Allen</u>, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  <u>Id.</u>  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as

1   a matter of law." <u>Celotex</u>, 477 U.S. at 323.

2   **II.   <u>Analysis</u>**

3       Plaintiff claims that defendants violated his Eighth Amendment right to be free

4   from cruel and unusual punishment by using excessive force when handcuffing him and

5   locking him in the barbershop for over six hours.[5]  (Compl. at 15.)  Defendant Schlosser

6   argues that he is entitled to summary judgment because he did not personally participate

7   in the June 30, 2004 handcuffing incident.  (MSJ at 2.)  Defendants Miller, Edmundson,

8   and Padilla argue that they are entitled to summary judgment on this claim because (1)

9   defendants did not use excessive force during the handcuffing incident on June 30, 2004;

10  (2) plaintiff cannot demonstrate that defendants acted "sadistically" and "maliciously" for

11  the purpose of causing harm during the June 30, 2004 handcuffing incident; and (3)

12  defendants are entitled to qualified immunity because at the time of the handcuffing

13  incident, it was not clearly established that use of handcuffs without use of force violated

14  the Eighth Amendment.  (MSJ at 11-15.)

15      In its prohibition of "cruel and unusual punishment," the Eighth Amendment

16  places restraints on prison officials, who must provide all prisoners with the basic

17  necessities of life such as food, clothing, shelter, sanitation, medical care and personal

18  safety, and may not use excessive force against prisoners.  <u>See</u> <u>Farmer v. Brennan</u>, 511

19  U.S. 825, 832 (1994); <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992).  A prison official

20  violates the Eighth Amendment when two requirements are met: (1) the deprivation

21  alleged must be, objectively, sufficiently serious, and (2) the prison official possesses a

22  sufficiently culpable state mind, i.e., the offending conduct was wanton.  <u>See</u> <u>Farmer</u>, 511

23  U.S. at 834.  What is required to establish an unnecessary and wanton infliction of pain

24  _____

25      [5] Plaintiff also claims that there is a genuine issue of material fact as to the reason for the cell
    search.  (Plaintiff's Opp. at 8-10.)  Plaintiff alleges that his cell was searched due to the missing
26  hacksaw blade, while Padilla alleges that the cell was searched because he suspected plaintiff
    was hiding marijuana.  The parties' dispute of fact as to why the cell was searched is not material
27  to the underlying claim of excessive use of force and therefore will not defeat a motion for
    summary judgment.  <u>See</u> <u>Anderson</u>, 477 U.S. at 247.
28

1  varies according to the nature of the alleged constitutional violation.  <u>Whitley v. Albers</u>,

2  475 U.S. 312, 320 (1986).  Where prison officials stand accused of using excessive force

3  in violation of the Eighth Amendment, the core judicial inquiry is whether force was

4  applied in a good-faith effort to maintain or restore discipline, or maliciously and

5  sadistically to cause harm.  <u>Hudson</u>, 503 U.S. at 6-7.

6      There is a split in the circuits on whether a prisoner must prove that he suffered

7  more than a de minimis <u>injury</u> in order to prevail on an excessive force claim.  <u>Compare</u>

8  <u>Brooks v. Kyler</u>, 204 F.3d 102, 108 (3d Cir. 2000) ("[A]bsence of objective proof of non-

9  de minimis injury does not alone warrant dismissal.") and <u>Moore v. Holbrook</u>, 2 F.3d

10  697, 700 (6th Cir. 1993) ("No actual injury needs to be proven to state a viable Eighth

11  Amendment claim.") <u>with</u> <u>Gomez v. Chandler</u>, 163 F.3d 921, 924 (5th Cir. 1999) ("[T]o

12  support an Eighth Amendment excessive force claim a prisoner must have suffered from

13  the excessive force a more than de minimis injury.") <u>and</u> <u>Norman v. Taylor</u>, 25 F.3d

14  1259, 1263 (4th Cir. 1994) (en banc) (plaintiff must show more than de minimis injury),

15  <u>cert. denied</u>, 513 U.S. 1114 (1995).  Although the Ninth Circuit has not addressed the

16  issue, it has strongly suggested that a prisoner need only prove that the use of physical

17  <u>force</u> was more than de minimis.  <u>See</u> <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002)

18  (clarifying that in embracing physical injury standard under 42 U.S.C. § 1997e(e) adopted

19  by several circuits, Ninth Circuit does not subscribe to reasoning of some of those circuits

20  that Eighth Amendment claims require that "the injury must be more than de minimis;"

21  standard used for Eighth Amendment excessive force claims only examines whether the

22  use of physical <u>force</u> is more than de minimis).

23      A.   <u>Defendants Miller and Edmundson</u>

24      With respect to defendants Miller and Edmundson, plaintiff's claim is that Miller

25  and Edmundson used excessive force in handcuffing plaintiff and leaving him in the

26  barbershop for six hours while his cell was being searched.  (Compl. at 12-13.)

27      This court finds that plaintiff has not raised a triable issue of material fact as to

28  whether defendants Miller and Edmundson used excessive force.  First, defendants' use

1   of force was de minimis.  Generally, to constitute excessive force, other forms of abusive

2   conduct must be alleged against the defendants in conjunction with tight handcuffing.

3   See Smith v. Yarborough, No. CV 04-4502-DSF, 2008 WL 4877464, at *12 (C.D. Cal.

4   Nov. 7, 2008).  In Yarborough, the district court analyzed several cases that dealt with

5   tight handcuffing as excessive force in the Eighth Amendment context, and found that "in

6   cases where tight handcuffing was found to constitute excessive force, the plaintiff was in

7   visible pain, repeatedly asked the defendant to remove or loosen the handcuffs, had pre-

8   existing injuries known to the defendant, or alleged other forms or abusive conduct by the

9   defendant."  Id.

10        Based on plaintiff's deposition, the undisputed evidence shows the following.

11   Plaintiff voluntarily obeyed orders to submit to a strip search and stand against a wall to

12   be handcuffed in order to transport him to the barbershop.  (Zelidon-Zepeda Decl. at

13   47:25-49:22.)  Officer Salazar handcuffed plaintiff, and defendant Edmundson

14   handcuffed Jones.  (Id. at 53:14-20.)  When plaintiff initially complained about the

15   handcuffs being too tight, Salazar moved them and relieved the pressure.  (Id. at 55:4-

16   57:19.)  After about twenty or thirty minutes in the barbershop, plaintiff complained to

17   defendant Miller that his handcuffs were again too tight and were cutting off circulation

18   in his arm.  (Id. at 67:13-68:4.)  Miller contacted his superiors and returned after a total of

19   about fifteen minutes later to inform plaintiff that he could not remove the handcuffs, but

20   he loosened them, which provided immediate relief and restored circulation.  (Id. at

21   69:13-71:8.)  After Miller loosened the handcuffs, plaintiff had no further pain or

22   circulation problems.  (Id.  at 74:19-24).)  Plaintiff states that he and Jones were not

23   handcuffed to anything in the barbershop, they had chairs to sit in, and the barbershop

24   was clean and the temperature was "fair."  (Id. at 78:19-79:14.)  Plaintiff was allowed to

25   use the bathroom for a urinalysis test, during which time the handcuffs were removed.

26   (Id. at 81:14-84:6.)

27        Although plaintiff may have been subjected to tight handcuffs for approximately

28   an hour, unlike other cases that have found that tight handcuffs presented a triable issue of

fact as to an excessive force claim, Miller and Edmundson did not ignore plaintiff's complaints about the cuffs.  When plaintiff complained about the tight handcuffs, measures were taken to relieve his discomfort.  See, e.g., Meredith v. Erath, 342 F.3d 1057, 1060 (9th Cir. 2003) (defendant IRS agent handcuffed plaintiff and for thirty minutes refused to loosen her handcuffs); LaLonde v. County of Riverside, 204 F. 3d 947, 960 (9th Cir. 2000) (defendant officers tightly handcuffed plaintiff and refused to loosen the handcuffs when he complained); Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993) (defendant officer tightly handcuffed plaintiff and refused to loosen handcuffs).

Moreover, plaintiff does not allege that defendants beat or abused him in conjunction with the tight handcuffs.  See, e.g., Martin v. Commissioner of CA Dept. of Corrections, No. 1:03-cv-06835-LJO-NEW, 2007 WL 1302743, at *2 (E.D. Cal. May 2, 2007) (plaintiff was kicked, handcuffed so tightly his hands immediately turned red and swelled, knocked to the ground, and had his face pushed into the asphalt); Navarro v. Bach, No. 04cv2013, 2008 WL 4492606, at *6 (S.D. Cal. Sept. 29, 2008) (officer punched and kicked plaintiff numerous times while he was handcuffed in a holding cell); Sweets v. Contra Costa County Bd. of Supervisors, No. C 06-07964 CW, 2008 WL 728551, at *1 (N.D. Cal. Mar. 17, 2008) (plaintiff alleged that officer handcuffed him and hit him in the head, ribs, arms, and legs with a billy club, banged his head against a wall and hit him in the head with his fists).  The evidence shows that plaintiff was able to sit in a chair in the barbershop and was not handcuffed to anything.  He was served a meal and was allowed to use the bathroom.  Also, the barbershop was in clean condition and the temperature was comfortable.

Furthermore, even drawing all inferences from the evidence in plaintiff's favor, the court finds that plaintiff's injuries were no more than de minimis.  Plaintiff stated that the tight handcuffs resulted in lines on his wrists, which disappeared by the time he got back to his cell, and cramps in his shoulders, which disappeared within the next day.  (Zelidon-Zepeda Decl. at 90:14-92:11.)  Plaintiff did not suffer any swelling, cuts, or bruises resulting from the handcuffing, and his range of motion was not affected.  (Id. at 91:7-

1  92:4.)  Additionally, plaintiff did not suffer any other type of injury from the handcuffing

2  incident, the handcuffs did not interfere with his breathing, and no medical expenses have

3  resulted from the incident.  (Id. at 92:12-93:7.)

4       Finally, there is no evidence that defendants Miller and Edmundson acted

5  "maliciously and sadistically to cause harm" to plaintiff.  Plaintiff stated that he believed

6  Salazar was the officer who initially handcuffed him, not Miller or Edmundson.  With

7  respect to Miller, once plaintiff alerted Miller to the tight handcuffs, Miller took

8  affirmative steps to attempt to alleviate plaintiff's pain.  First, Miller consulted with

9  Salazar and Padilla about the handcuffs.  Next, after being informed that he could not

10 remove the handcuffs, Miller instead loosened them, which provided plaintiff with

11 immediate relief.  Plaintiff has referred to Miller as the officer who is always "coming to

12 our aid."  (Id. at 81:14-19.)  Under these circumstances, Miller's loosening of plaintiff's

13 handcuffs after plaintiff's complaint that they were too tight demonstrates that defendant

14 Miller did not acted maliciously and sadistically for the purpose of causing harm.  See

15 Hudson, 503 U.S. at 6-7.

16      As for Edmundson, plaintiff does not state that he had any further contact with

17 Edmundson after being escorted to the barbershop.  (Zelidon-Zepeda Decl. at 103:18-23.)

18 Moreover, plaintiff does not say that he complained to Edmundson about the tight

19 handcuffs after they were adjusted by Salazar.  There is an absence of evidence that

20 Edmundson was aware of plaintiff's continuing pain from the handcuffs.  Therefore,

21 plaintiff has failed to show that defendant Edmundson acted maliciously and sadistically

22 for the purpose of causing harm.  See Hudson, 503 U.S. at 6-7.

23      Accordingly, defendants Miller and Edmundson are entitled to summary judgment

24 on this claim.

25      B.    Defendants Schlosser and Padilla

26      Plaintiff claims that Schlosser is liable because he "is responsible for direct

27 supervision [of] defendant Padilla and had been aware or should have been aware of

28 Miller, Edmundson, and Padilla continued [sic] display of keeping plaintiff in handcuffs

with intent to cause him pain and suffering." (Plaintiff's Opp. at 3.) Plaintiff claims that Padilla is liable as the officer in charge of G-wing who ordered plaintiff to remain in handcuffs until the cell search was completed. (Compl. at 13.)

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "It has long been clearly established that '[s]upervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" Preschooler II v. Davis, 479 F.3d 1175, 1183 (9th Cir. 2007) (citations omitted). Under no circumstances is there respondeat superior liability under section 1983. Or, in layman's terms, under no circumstances is there liability under section 1983 solely because one is responsible for the actions or omissions of another. See Taylor, 880 F.2d at 1045; Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984).

Plaintiff has failed to establish a genuine issue of material fact as to the personal involvement of defendant Schlosser in the alleged violation. Plaintiff stated that he did not see or talk to Schlosser at all during the June 30, 2004 incident. (Zelidon-Zededa Decl. at 106:14-21.) When asked whether he had any evidence that Schlosser knew about the handcuffing incident while it was taking place, plaintiff responded, "No. I don't think he knew until after I filed a grievance on it." (Id. at 108:20-109:6.) In fact, plaintiff "did not even know [Schlosser] existed" until he submitted an inmate grievance regarding this incident. (Id. at 107:1-3.) Therefore, plaintiff has not presented any evidence that

Order Denying Defendant Schlosser's Motion to Dismiss; Granting Defendants' Motion for Summary Judgment
G:\PROSEEX1\J Murai\Owens_MSJ_order.wpd
15

1    Schlosser had any personal involvement in the handcuffing incident, or knew of the

2    alleged constitutional violation and failed to prevent it.  See Taylor, 880 F.2d at 1045.

3        In order to overcome the absence of evidence regarding Schlosser's personal

4    participation in the handcuffing incident, plaintiff relies on Johnson v. Duffy, which states

5    that "[a] person 'subjects' another to the deprivation of a constitutional right, within the

6    meaning of section 1983, if he does an affirmative act, participates in another's

7    affirmative acts, or omits to perform an act which he is legally required to do that causes

8    the deprivation of which complaint is made.  Moreover, personal participation is not the

9    only predicate for section 1983 liability.  Anyone who 'causes' any citizen to be subjected

10   to a constitutional deprivation is also liable."  588 F.2d 740, 743 (9th Cir. 1978) (citation

11   omitted).  Plaintiff argues that Schlosser had a duty to supervise his subordinates, and his

12   failure to do so caused the "wrongful" handcuffing incident.  (Plaintiff's Opp. at 5.)

13       Plaintiff's argument fails for two reasons.  First, the handcuffing incident was not a

14   violation of the Eighth Amendment.  See supra Part II.A.  With no constitutional

15   violation, Schlosser's alleged failure to supervise his subordinates becomes moot.

16   Second, even if there was an Eighth Amendment violation, plaintiff offers no evidence to

17   show that Schlosser neglected his supervisory duties.  Furthermore, plaintiff's causation

18   argument is no more than *post hoc, ergo propter hoc*.  In other words, plaintiff argues that

19   because the handcuffing incident occurred, Schlosser must have failed to supervise his

20   subordinates.  However, there is no evidence to show that Schlosser was delinquent in his

21   duties, or that there was any act or omission on his part that led to the handcuffing

22   incident.

23       Plaintiff has also failed to establish a genuine issue of material fact as to the

24   personal involvement of Padilla in the alleged violation.  Padilla was the officer in charge

25   of G-wing at the time the handcuffing incident occurred, but plaintiff made no showing

26   that Padilla directed, participated in, or had knowledge of any alleged misconduct on the

27   part of Miller, Salazar, and Edmundson.  The only allegation plaintiff made in his

28   opposition to the summary judgment motion regarding Padilla's involvement was that

1    Padilla was the sergeant in charge, and had he suspected plaintiff of concealing narcotics

2    in a body cavity the proper procedure was to conduct a search in a medical setting, rather

3    than keeping plaintiff handcuffed in the barbershop.  (Plaintiff's Opp. at 9-13.)  However,

4    plaintiff was suspected of concealing narcotics in his cell, not in a body cavity.

5    Accordingly, Padilla ordered a cell search for narcotics, which involved removing the

6    inmates and securing them in another area.  Since G-wing does not have holding cells,

7    inmates are locked in the barbershop when their cells are being searched.  (Padilla Decl.,

8    ¶ 6.)  Padilla presented evidence that inmates are secured in the barbershop because G-

9    wing does not have any holding cells, and they are handcuffed as a precautionary measure

10   to prevent the disposal of evidence in the sink or other hiding places in the barbershop.

11   (Id.)  There is no evidence to support plaintiff's assertion that he was suspected of

12   concealing narcotics in a body cavity.  Such a theory is further discredited by the fact that

13   plaintiff was not subjected to a body cavity search in the barbershop, and that marijuana

14   was found during the cell search.

15          Furthermore, there is no evidence that Padilla directed officers to handcuff plaintiff

16   tightly.  The fact that Miller loosened the handcuffs after plaintiff complained tends to

17   show that no order was given.  Additionally, there is no evidence that Padilla even knew

18   that plaintiff's handcuffs were too tight.  Plaintiff does not say that he complained to

19   Padilla; in fact, plaintiff states that he did not talk to Padilla until Padilla brought him a

20   dinner tray, which occurred hours *after* plaintiff's handcuffs were loosened.

21          Although the Director's Level review found that the length of time plaintiff spent

22   in handcuffs was inappropriate, there is no bright line for determining the length of time

23   that a prisoner can be held in restraints for penological purposes before it rises to the level

24   of an Eighth Amendment violation.  Compare Key v. McKinney, 176 F.3d 1083, 1086

25   (8th Cir. 1999) (finding no Eighth Amendment violation where prisoner was left in

26   handcuffs and leg shackles for a period of twenty-four hours), and Williams v. Burton,

27   943 F.2d 1572, 1576 (11th Cir. 1991) (upholding the use of four-point restraints for over

28   twenty-eight hours), with Hope v. Pelzer, 536 U.S. 730, 737 (2002) (finding "obvious"

1  Eighth Amendment violation where prisoner was handcuffed to a hitching post for seven

2  hours).  Padilla presented evidence that handcuffing inmates in the barbershop is a control

3  procedure used only for safety purposes during a cell search and is limited to the time

4  necessary to serve that purpose.  (Padilla Decl., ¶¶ 6, 8.)  Handcuffing inmates in the

5  barbershop is necessary in order to approximate the conditions of a standard holding cell,

6  where prisoners are clearly visible from all sides and which contains no furnishings for

7  hiding contraband.  (Id., ¶ 7.)  This evidence demonstrates a good-faith effort to "maintain

8  or restore discipline," rather than a malicious and sadistic effort to cause plaintiff harm.

9  See Hudson, 503 U.S. at 6-7; see also Jeffers v. Gomez, 267 F.3d 895, 917 (9th Cir.

10  2001) (finding that courts must accord prison administrators wide-ranging deference in

11  the adoption and execution of policies and practices to further institutional order and

12  security).

13      Plaintiff has failed to raise an issue of material fact regarding participation in or

14  knowledge of any alleged violation by Schlosser or Padilla.  See Taylor, 880 F.2d at 1045

15  ("A summary judgment motion cannot be defeated by relying solely on conclusory

16  allegations unsupported by factual data.").  Accordingly, defendants Schlosser and Padilla

17  are entitled to summary judgment on this claim.

18              C.    Qualified Immunity

19      Defendants contend that even if they violated plaintiff's constitutional rights, they

20  are entitled to qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982),

21  which protects government officials from liability for civil damages if a reasonable

22  person would not have known that the conduct violated a clearly established right.  The

23  burden is on defendants to establish that their actions were reasonable.  Doe v. Petaluma

24  City School Dist., 54 F.3d 1447, 1450 (9th Cir. 1995).  The threshold question in a

25  qualified immunity analysis is whether the facts alleged, taken in the light most favorable

26  to plaintiff, show that the defendant's conduct violated a constitutional right.  Saucier v.

27  Katz, 533 U.S. 194, 201 (2001).  If no constitutional right was violated, the inquiry ends

28  and the defendant prevails.  Id.  If the plaintiff's claim withstands the threshold inquiry,

Order Denying Defendant Schlosser's Motion to Dismiss; Granting Defendants' Motion for Summary Judgment
G:\PROSEEX1\J Murai\Owens_MSJ_order.wpd
18

the court proceeds to determine whether the constitutional right was so clearly established that a reasonable official would understand that what he or she was doing violated that right.  <u>Id.</u> at 201-02.  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  <u>Id.</u> at 201.

Because this court has concluded that plaintiff has not raised a triable issue of material fact as to his claim of excessive force against defendants Schlosser, Miller, Edmundson, and Padilla, the court need not reach their qualified immunity defense.  <u>See</u> <u>Saucier</u>, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

## CONCLUSION

1. Defendants Schlosser's motion to dismiss for failure to exhaust administrative remedies (docket no. 42) is DENIED.

2. Defendants' motion for summary judgment (docket no. 42) is GRANTED.

3. Plaintiff's motion to strike the Padilla declaration in support of defendants' motion to dismiss and for summary judgment (docket no. 55) is DENIED.

4. Plaintiff's request for judicial notice in support of plaintiff's opposition to summary judgment (docket no. 56) is GRANTED as to Exhibits A and B, and DENIED as to Exhibit C.

5. Plaintiff's claims against Salazar are DISMISSED without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

The clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED: ___9/30/09_____

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

Order Denying Defendant Schlosser's Motion to Dismiss; Granting Defendants' Motion for Summary Judgment
G:\PROSEEX1\J Murai\Owens_MSJ_order.wpd